I propose to address the issues in the case in the order in which they are briefed, except that I will start with the claim of waivers that have been made by Kingston. Kingston says that by dropping infringement claims during the case after claim construction that Sandisk waived any further appellate challenge to that. I think the principle and best answer to that can be found in the stipulation that led to the final judgment in this case, which says, and I quote, the stipulation shall not in any way prejudice any party's right to appeal this matter in whole or in part, including, but not limited to, an appeal to the court's September 22, 2010 claim construction order, and it specifies docket entry number 604. That's at 17755 of the record. With regard to the claim that what we did here is functionally do the same thing as stipulated dismissal of these claims, that's not correct. And I point the court, although it's not in the Joint Appendix, it's available on PACER, to docket entry number 427, which was entered on 1-20-2010. That was how Sandisk handled an actual dismissal of the 332 patent from the case. It was an actual Rule 41A dismissal, and it said that it was a covenant not to assert that patent at all. Does this involve a failure to prosecute? You just dropped the claims altogether. Well, no, not at all, Judge Rand. What you have here was a case where when the claim construction order was issued, Sandisk realized that it could not pursue, in good faith, an infringement claim under that claim construction, and so no longer pursued the infringement claim. If this were a one-patent case, I think we wouldn't be here with this argument, because what Sandisk would have done with a patent like that is to say we stipulate to non-infringement, and we'd have a final judgment and bring it up. But since we had multiple claims in the case, we couldn't have a final judgment. We didn't seek, and neither party sought a Rule 54B partial final judgment, so we had to wait until the entry of final judgment to bring these issues up. But does your argument on the stipulation, does that rest on the fact that the reference to the remaining claims were something more than the 424 patent that had survived summary judgment? Yes, and I think when you see that, when you look at the stipulation, which was signed by both sides, including Kingston, and so ordered by the court, you'll see that it is in broad, inclusive language, in whole or in part, and it addresses specifically the claims construction order. Had there been any misunderstanding about that and any thought on the other side that we had stipulated to a dismissal of everything else, that was the time to raise it instead of signing on to that language. Was there any discussion before the court in any transcript of any sort or anything like that? I didn't see any. On this issue? Yes. Not that I am aware. And there's no judgment of non-infringement. There's no judgment of non-infringement. Well, there is a take-nothing judgment in the case, which says that we, the plaintiffs, take nothing, and so by definition, there's a summary, there's a judgment of non-infringement. The point is, with regard to the waiver issues, at every point, Sandisk intended to keep everything alive. And I don't want to spend too much time on that because I do want to get to the merits of the case in the limited time I've got here today. But I do want to address any other questions that you have on that. Well, there's a second waiver issue, right? There are two waiver issues. There is. Do you want to spend a couple seconds on the second waiver issue? Sure. And that has to do with certain claims of the 842 and the 316 patent. And the claim that's been made against us is that because the claim term that was being interpreted at the Markman stage was specifically called out to be with regard to Claims 1 and 10 of the 842 patent, that somehow or another we acceded to that claim construction with regard to non-infringement when we asserted other claims that had similar or identical language in it. And I think the answer to that is, would you have us make a fruitless, continue to pursue a fruitless claim construction when all of the logic of Judge Crabb's order with regard to the V and A part, meaning a single part, a single portion, would apply equally well to the same or similar language in the other part. And you've got some of our cases that say, do they not, that you don't have to pursue what has already been decided by the court. Right. Exactly. Exactly. So let me turn, to start, to the 424 patent. Sandus said that recording a relative time of programming pages meant storing an indicator that allows the memory system to determine that the new pages were programmed subsequent to the superseded pages. Tingston argued that that required an indicator of the time of programming that had to be recorded into a page. The district court properly rejected that. Then the district court at Markman went on to argue, to hold, that limitation is not satisfied by what the parties called the block recording method described in the specification. Well, we believe that was error. That was really just the foundation for the bigger error which came at summary judgment where the judge said that the recording of relative times does not include what the court called non-temporal information. What does that mean? I mean, this is a very experienced district court judge. It is. I'm sure the advocacy was good on both sides. So I guess I see the arguments you make, and I'm wondering what led her, therefore, in your view, astray on this question. Boy, it's not an errand I like to go on to try to predict subjectively why she went on this. But her rationale? As best as I can understand it, Judge Proch, the rationale was that she was looking for something that was an actual time, that was something like 9 minutes and 40 seconds. And our argument, in fact, when I saw the calendar announcement here today, we have here on the calendar announcement a relative time of argument. Sandisk is listed first, but it doesn't say that that argument is going to happen exactly at 10.02. Well, I'm not sure you make this exact argument, but it seems to me under that construction you're ignoring the word relative. So relative has no meaning if you're looking for an exact time, right? I mean, that's your argument. Right, that's exactly our argument. Our argument is that relative time includes programming pages in a particular order when you know what the order is that you read the pages in. If you know that the third one you read was programmed, or that the ones you read in the update block were programmed after. Now the block has a time. The block may have a time, yes. Just like the schedule, in fact, says that the calendar is called at 10 o'clock a.m. I think the court appreciates our points with regard to the 424 patent, but I think where the court went a strange approach, just to be clear, is at page 874 of the judge's opinion. What she did ultimately is she insisted on a time of programming, and she even italicized the word time. And what she really did there was read out the term relative, which strangely enough, even though it's an additional word, ends up broadening the term time, because if it weren't there, then time of programming, in ordinary meaning, you would expect that it would be 10 o'clock, 10.02, whatever the value of a time stamp was. But I think she eventually came back around to the notion of that a time was required. Since you refer us to those pages, I mean, some of this is under seal, some of this is confidential, does that remain as it is today? It does right now. I will try to deal with the confidentiality as best as I can in general terms, but the parties still have maintained the confidentiality designations here, particularly with regard to the operation of the Kingston devices. Let me turn back, Judge Probst, to the 842 and 316 patents that we talked about. Can you talk about the single data? I'm sorry? The single user data portion and that claim construction issue? Right. That's where I'm going next. We think that this court's precedent is perfectly clear. Baldwin Graphic says that A and B that appear later on in the claim does not mean that the antecedent is limited to one. Our friends on the other side cite the Harari v. Lee case involving some of the related patents, but it's important to note in Harari the language it issued there was a number of control gates, a bit digit line, a number of cells. When you saw that language in that order, it was quite proper that the court would limit a bit digit line to a single digit line. That is, in summary, our argument with regard to those patents, and that's where the claim construction error was there. As to the 893 patent... Now explain why this argument was not waived as well. I'm sorry? With regard to 893 or with the statements that you were just making with respect to whether at least user data or overhead information is singular or not. That argument was not waived because it was already resolved in the Markman ruling with regard to claims 1 and 10 of the 842 patent, and since the exact same language or similar language appears in the other claims that were asserted, there's no way we could have overcome that language without at the very least irritating the judge and running into a law of the case argument. But wasn't claims 1 and 10, weren't those the ones that you supposedly withdrew? We did not press the infringement claims with regard to those. In fact, we were done after that claim construction. We thought we had an infringement read with regard to these other claims which had fewer elements and did not include the overlapping limitations. So if we find that those claims were withdrawn, then on what basis would we have to extend the arguments that you made to those claims to the other claims? Because we're talking about the same language and it was a law of the case ruling that we could not have overcome. In fact, to that point, Kingston in its summary judgment motion argued that the same claims construction applied, and the judge recognized that as well in her order. So we were pretty well stuck with that. With regard to 893, the error I think is pretty well set forth in our brief. The court's error there was in assuming that there were only two kinds of blocks and three kinds of data and that a logical block address had to fit in somewhere. Figures 12 and 14 of the 893 patent show otherwise. When you look at figure 12 in particular, you'll see both reserved blocks and fair blocks as well as other kinds of blocks like boot blocks, user data blocks, and overhead blocks. So it's not true that these two groupings of blocks that are set forth in the 893 claim are the only groups of blocks into which something might fall. The judge's error was in reading this comprising claim to be limited to these two groups of blocks and nothing more. With regard to the 808 patent, we believe that the district court's error was reading designating a combination to mean ability to designate any combination. As we pointed out in our brief, that sort of capability language is inappropriate for a method claim. And I think if you look by contrast to systems claims 5 and 11 in this patent, you will see that those claims contain the sort of any language that is demonstrably absent from claim 16 of the 808 patent. I think this shows that reading A as any by bringing it in from the specification was inappropriate with regard to this. Counsel, you're running down on time, but I wanted you to address the district court's granting the summary judgment under the doctrine of equivalence. I will, Your Honor. And that's true with regard to two of the claims, 44, claim 20. Well, can I ask you to cover, and I know you're running out of time, but what happens if we, let's assume hypothetically one were to agree with you on the dedication disclosure point. Does that end the case or does it go back then? I think it's going to have to go back on the procedural record that we have here, but I think we're going to have a fairly straightforward equivalence case at that point. But with regard to the disclosure dedication that the judge found here, with regard to 424, claim 20, the basic answer, Judge Rainer, is that no kind of block marker alone or in combination with a logical block address is in any way disclosed in the 424 patent, so it couldn't have been dedicated. At most, this is sort of a generic dedication argument that this court has rejected in cases like PFC Computer. With regard to the 316 patent, claim 79, there is a fundamental tension between the judge's literal infringement ruling and the judge's doctrine of equivalence ruling. On literal infringement, the judge did not identify anything in the claim language itself that defines controller that was absent from the controller that was on multiple chips with regard to the accused device, and I'm being careful here with regard to the record. But nonetheless, the judge said that you can't have any part of it on the flash memory chip. At the same time, by the way, the judge recognized that a controller could be on multiple chips. At the same time, though, with regard to the disclosure dedication, the judge found that this was disclosed and dedicated somehow. So I can't see how there's no support for this in the specification, yet it was so disclosed that it was dedicated to the public. I think I've tried to do the best I can in the limited amount of time. I'll come back on rebuttal to answer any questions. Okay. Well, we'll give you a couple more minutes on rebuttal to add to it, and therefore we'll even out the other side by starting them off with two extra minutes if they need it. Thank you, Your Honor. May it please the Court. Let me start with the waiver and jurisdiction issues that counsel started with as well. First, we have a form of final judgment here, and it specifically references assembly judgment order, and it references only three of the patents in suit. That alone sets the balance of this court's jurisdiction over the appeal. Of course, the record will show that Sandus' representation that it intended to preserve the other claims does not comport with the record. But even if it did, a party's intent can't set the scope of jurisdiction. It's the judgment that sets the scope. Although the summary judgment order may have been limited in the claims that it addressed, I mean, the issue here is whether Sandus preserved its ability to appeal the claim construction that weren't addressed. And that's right. Even if they withdrew the claim, why shouldn't we find that to be equivalent to, let's say, to a stipulation of non-infringement, and therefore you have a penality on the merits and it's preserved for appeal? Had there been a stipulation of non-infringement, this court would have jurisdiction. But there wasn't. That was a strategic choice that Sandus made. But isn't the withdrawal similar to a stipulation? No, Your Honor, because then this court would be reviewing an interlocutory claim construction decision, and this court would use judgments that are not claim construction orders. Now, where the claim construction order is essential to the judgment, the claim construction gets reviewed, but here there was a claim construction order without a judgment of non-infringement. For whatever reason, Sandus chose not to pursue a judgment of non-infringement, and it's not for lack of notice. In our papers on summary judgment, we specifically stated that Sandus agreed to dismiss the 808 and 893 patents entirely and to dismiss claims 16710, et cetera, of the 842 patent. We didn't say that the case was over as to them or that it was resolved. We said Sandus agreed to dismiss. In opposition, Sandus did not dispute that statement, and when the court issues a summary judgment order, you see in the court's decision, the court stated, the district court stated, that Plaintiff has also dropped the 808 and 893 patents. That's why the district court believed that, because there was that colloquy in the summary judgment briefing. In fact, one page that we cited in our red brief at page 13 in the footnote, but it was assigned an appendix number but apparently didn't make it into the bound copy of the appendix, and we would propose to submit this page by letter or supplemental appendix, is a portion of Sandus' opposition in which they expressly stated in the footnote, although Kingston's standing defense is directed to the 808, 316, and 842 patents, Sandus is no longer asserting the 808 patent in this case. It didn't say that it's reserving its rights to appeal. It didn't say that it's accepting non-infringement. It said it's no longer asserting the 808 patent in this case, and we can supply that additional appendix page by letter or whatever. Well, at least that would give the other side an opportunity, if it doesn't have one on rebuttal, to respond to that. Certainly. Because it's not in the records that we have. And the reason why that statement by Sandus singled out just the 808 patent and not the 893 patent is it was made in the context of a standing issue which did not apply to the 893, so there was no reason for them to bring up the 893 in that particular footnote. But you make another argument with respect to some of the other claims, which seems to me, frankly, to be kind of a stretch in terms of them having withdrawn these, but they're relying on claims not withdrawn and the claim construction that you claim they didn't object to, and that seems to me a little tenuous. Right. This is on the 842 patent, and there are two groups of claims. There's claims 1 and 10, which like the 808 and 893 were ones that were not pursued, and then there's claims 61 and 67. And the question there is would it have been clearly futile for them to have pursued it? What could they have done to make the record clearer? First, the representation of the claims are identical is not true. The claim language is different between claims 1 and 10 versus claims 61 and 67. But the claims that were construed by the court are identical, right? No. No terms construed by the court, no? The language is actually different between the two. Now, the logic of the court's reasoning in claims 1 and 10 would apply to claims 61 and 67. Okay. But in that situation, it's incumbent on the litigant to point that out to the district court to say, for purposes of this summary… And what is it really conceivable that the district court would have done? She wouldn't have applied another one. You agree that they're similar enough so that the same rationale would apply, right? So the theory of futility is not to put counsel in a position to annoy the district court judge or to waste the court's time by trying it again. Why is that not precisely what went down here? For two reasons. The first is the district court's opinion actually states plaintiffs concede that claims 61 and 67 are limited to a single user portion and single overhead portion. The district court relied on Sandus' affirmative assertion that the claims were so limited. They had a construction at that point. They had a construction on different claims. Claims 61 and 67 were never presented to the district court during the markup. You don't think that that concession came out of the claim construction that they had already unsuccessfully pursued before the district court? You really think realistically there was some misunderstanding by the court in terms of what their position was? Because it's not identical claims, the proper course for a litigant is to simply say, and this would not annoy a district court judge. I certainly have said this many times myself in district court. For purposes of this motion, for purposes of opposing summary judgment, we will assume that claims 61 and 67 are limited in this way. But that's not what Sandus argued. They argued that claims 61 and 67 are limited to a single user data portion and a single overhead portion. They made that affirmative assertion without reservation. Now, one reason that they may not have raised it in Markman is that the argument on that was even weaker for them than on claims 1 and 10. Either way, they had some duty to point out to the district court judge that if they really believed they weren't conceding this, they needed to simply say, for purposes of this motion, we'll assume that the court's construction of claims 1 and 10 applies equally to 67, and even under that construction, here's why you should deny summary judgment. It would have been very easy to do without annoying the district court. You want to turn now to, can you at least address the block issue and also this relative time? Because it seems to me that the requirement that the court imposed really doesn't account for the word relative. It's a clear time requirement, and that's not exactly what the claim term says, right? Yes, Your Honor. So with respect to the issue of whether it has to be temporal or non-temporal, what the district court simply said is, and again we're dealing with the literal words of the claim, is that relative time has to reflect some kind of time. What Sandusk asserted in the district court was that a location could substitute for time. And what the district court said was, any information from which newness can be derived, any information from which you can determine which page is newer, is not enough. Sandusk was simply saying, if we look at the location, we can make an inference. How does that account for it? It seems to me, how is that different than if the claim term, the limitation is that recording the time of programming as opposed to what it actually says, which is recording a relative time of programming? How does that account, what you're telling me, how does that account for the term relative? That says you've got to put the time on it. And the term time is still in there. We would submit... Yeah, but the word relative accompanies the word time. So how does what you're arguing or what the district court concluded account for the term relative in the plain language? The district court simply said it has to be something related to time. It doesn't have to be, for example, a timestamp. A timestamp would be time that isn't relative. But you can reflect time in other ways. Like, for example? One example would be a counter. Sandusk in its briefing said that the district court's construction reads out this embodiment of what they call a modulo end counter. It does not. The district court didn't deal with the modulo end counter. The issue wasn't presented to the district court. And so a counter would be an example of something that, like a clock, it's a counter that goes from 0 to 12 and then starts over again. That does show a relative time. It need not be an exact timestamp, but a counter can be used as a way of showing relative time. Can't before and after on-off stage be relative times? If there was information that was based on time, if, for example, information recorded in the block said, this block is after some other block, that might be one example. But the infringement theory that was presented to the district court was simply location. And what the district court said is a relative time still has to be time. You can't read the word time out of the claim. And so simply saying, I know which one's newer because of where it's positioned in the block isn't recording time information. I hate to say this, but can't we think of this in four dimensions instead of three? And that way you get extra data by putting in that fourth dimension. If that information was actually programmed into a block, there might be a theory there. But here what we have is a situation where the plaintiff's infringement theory was that there's no information actually programmed about the time or recorded as the words in the claim. It's simply location. It says, because I know that you're in slot number seven, you must be newer than what's in slot number five. There's no piece of data in slot number seven that they're pointing to that indicates a relative time. There's no piece of data in slot number five that indicates a relative time. They're simply saying the fact that one is located in seven and the other is located in five means one is newer than the other. Doesn't the word relative indicate the recording of two separate claims? It does. For example, one for each page. And that gives meaning to the word relative also, doesn't it? Yes, it does. And, in fact, the other issue here is that the time has to be recorded on a page-by-page basis. That was the other infringement issue that the district court resolved by summary judgment, that it's not enough to record the time for the block, but the claim language specifically says recording the relative time for each page. And so those two things together also reinforce the idea that this has to be done on a page-by-page basis. And that there has to be specific relative time information programmed into the block, not merely an inference, which is really what the infringement theory was. It's an inference that the location is something from which you can derive a time. Let me turn next to the dedication disclosure issues, starting first with Claim 79 of the 316 patent. And this one, it's important to understand that both literal and doctrine of equivalence infringement was asserted here. And what the district court did was it looked at what is the meaning of a controller. A controller here is something that may reside on more than one chip, as the district court said, but it's something that is identifiable by those of skill in the art. What Sandus proposes is that you simply draw a box around whatever circuit elements you want, no matter where they're located across disparate chips, and call that a piece here, and a piece here, and a piece here, and a piece here, and call that the controller. And in fact, the evidence for the district court from Sandus' own expert was to the contrary. Sandus' own expert had shown that when you look at a flash memory device, there was a picture in his expert report, there's a chip on the front called the controller, a chip on the back called the NAND flash. And he said that the read-write circuits are on the NAND flash side, and the controller's on the front side. So the evidence for the district court was that these were clearly distinguishable elements. Whether they're on one chip or more than one chip, there's something that people of skill in the art would say that's a controller, that's your flash memory chip. Can I move you over a little? We don't have very many cases that involve this disclosure dedication rule. That's a very rare thing, so I'm trying to really figure out. Is it your view, do you understand our case law is requiring that the patent has to indicate that the unclaimed subject matter is an alternative to the particular limitation that it explicitly has to say that? Because that's the way I'm reading FISER, and I wonder if you disagree with that. I do disagree, because I think RE Service, which is the primary case which resolved this doctrine, does not require that. It simply says that one of skill in the art, and this is later repeated in the PSC case, one of ordinary skill in the art must be able to recognize and understand the unclaimed subject matter. And so we don't think that... But it doesn't have to understand that it's an alternative to the particular limitation at issue? Is it your view that they don't have to point that out? There doesn't have to be an express statement that this is an alternative. But one of ordinary skill in the art reading the disclosure would have to understand that it's an alternative. But it doesn't require words specifically to that effect. Well, there's got to be something there to indicate that it's an alternative, right? Otherwise it's just speculation, regardless of who's looking at that. Right, and in this case for Claim 79, it was very clear there was an alternative because the patent incorporated by reference, which was from the same inventor, had an express showing that you had a controller and you had read-write circuits located distinct and separate from the controller. So the district court had in front of it an embodiment in the patent which showed the read-write circuits contained within the controller and then had the patent incorporated by reference which showed this alternative embodiment. And what language? I mean, can you point us to something either? Are you looking then at the 338 and the 316? What's the closest you can point to Judge Raynard's point that you have to point to something that someone would understand that this is an alternative? Right. Where is it? I think the clearest is the circuit diagram itself in Figure 5 of the 338. There isn't specific language saying that Figure 5 is an alternative from another related patent, but it clearly shows a distinct embodiment. And especially because it is a separate patent incorporated by reference, it would be clear to one of Skill in the Art that this would be another embodiment. And in fact, the expert report that was submitted by Sandisk Expert did say that there are different ways of doing this. Sometimes read-write circuits are incorporated in the controller and sometimes they're outside. That alone would also suggest that those of Skill in the Art would view these as alternative embodiments. If the panel has no other questions, that completes my remarks. Thank you. Thank you. You've got a few minutes left. Thank you very much, Judge Prost. With regard to the question about the judgment, the judgment here was written by the clerk at the direction of the district court in her summary judgment ruling. It's not surprising that it incorporated language saying that there was a summary judgment grant with regard to those three patents. To the point of the non-appendix material that Mr. Barkin cited to you, I think actually that answers the question in our favor. When Sandisk said in that paper that the standing defense, with regard to the standing defense, that it is no longer asserting the 808 patent in this case, did it drop its argument with regard to standing to the 808 patent? It did not. It made the argument that it had standing with regard to the 808 patent, which strongly shows, in fact I think it compellingly shows, that Sandisk and the parties viewed standing under the 808 patent as still a live issue for precisely the reasons that we're here today. We might get a reversal on the claim construction, and it's going to be important to have that ruling. So you can take a look at that. That's docket entry number 748 in the 607 case. I think it's under seal, but if Mr. Barkin would like to supply it, he'll see exactly that. Judge Wallach, with regard to the 424 patent and the issue of relative times, I think you appreciate our argument. I think the argument that's being made on the other side reads the term relative completely out of the claim. I want to take you to the 893. Sure. I think it's fair to summarize that dispute as whether the logical addresses are flawed characteristics. I'm sorry, say that again. To summarize the dispute in there as seeing whether logical addresses are flawed characteristics. Whether logical addresses are physical, what we believe are limited to physical flawed characteristics or whether they can be in some other block. Whether physical or logical addresses. I guess I'm not sure I understand your question. I'm sorry. Could you say that again? Flawed characteristics include addresses, correct? It includes what are called physical addresses. You can go back and see that. It also includes logical addresses, does it not? No, it does not, in fact. Because if you look at what is described as flawed characteristics, You're just ignoring my question. Right. Now I understand it. The characteristics that are set forth are physical information. You can look at column 13, lines 60 to 65, that says that group 1 does not include quote physical overhead information about the block or its operation. You can also look at column 14, lines 5 to 7, talking about this type of information about the physical block. This is not physical information. And finally, with regard to the argument about controller, the argument that was just made was that the controller has to be something that you can draw a box around. Well, in fact, if you look at the language of the claim with regard to controller, the language defines it as a controller connected to the array and removably connectable to the host through an electrical connector. Said controller including, and it has two further elements, an address generator and a data transfer control. That's all that's required. There's nothing in there that says it has to be a discrete unit, which is the limitation that the district court and my friends on the other side tried to read it. You've been gracious with your time. Thank you very much. Thank both counsel. The case is submitted. Thank you.